# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | CASE NO. 3:07-00263 |
| | ) | JUDGE WILLIAM J. HAYNES, JR. |
| KENNETH KENNEDY | ) | |

## SENTENCING MEMORANDUM

Comes now Kenneth Kennedy, by and through counsel of record, Paul J. Bruno, and hereby requests the Court to sentence him to five (5) years probation in this case. Mr. Kennedy qualifies for probation pursuant to 18 U.S.C. §3561. For the reasons stated in this Sentencing Memorandum, Mr. Kennedy should receive a sentence of probation.

Mr. Kennedy will first address in this Sentencing Memorandum his factual objections and the three legal objections he has to the calculations contained in the Presentence Investigation Report. Mr. Kennedy will then address the 18 U.S.C. §3553(a) factors in this case that support his request for probation.

### Factual Objections

1. Mr. Kennedy generally objects to the allegations that he solicited any money from "investors" for investment purposes.

2. <u>Page 14, Paragraph 33</u>: Mr. Kennedy signed documents related to the purchase of one home, not two. Although Mr. Kennedy's signatures are on the documents, Sheila Kennedy was the person who was primarily interested in the purchase of the home and was the person who was going to pay for the home.

3. Mr. Kennedy objects to the amount of restitution as noted on page 15 in paragraph 38.

4. <u>Pages 17 and 18, Paragraphs 57, 58, and 60</u>: These paragraphs should be removed as all of the charges have been dismissed.

**Legal Objections**

1. <u>Page 15, Paragraph 37 and Page 16, Paragraph 44</u>: *Loss Calculation. (U.S.S.G. §2B1.1(b)(1)(J))*

The U.S. Probation Office applied an 18-point enhancement based upon the government's assertion that the loss in this case is more than $2.5 million, but not more than $7 million. As no other loss number other than the proposed restitution amount in this case is noted, Mr. Kennedy will use the number of $3,024,291.70 as the government's loss figure.

In the Application Notes to U.S.S.G. §2B1.1, loss is defined as "the greater of actual loss or intended loss." See Application Note 3(A). The loss is this case is actual loss. "'Actual loss means the reasonably foreseeable pecuniary harm that resulted from the offense." See Application Note 3(A)(1). "'[R]easonably foreseeable pecuniary harm' means pecuniary harm that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense."

In this case, the Court heard from Mr. Kennedy at the trial. Although Mr. Kennedy did not forsee *any* loss, the Court may determine, based upon the jury verdict in this case, the Mr. Kennedy is responsible for some loss amount in this case. Mr. Kennedy would submit that the proper loss amount in this case would be, at most,

$151,500.00. This is based upon the following victims and the corresponding loss amounts[1]:

| | | |
|---|---|---|
| 1. | Brent Gray | $ 2,000.00 |
| 2. | Marvin Larson | $ 10,000.00 |
| 3. | Shirley Jones | $ 25,000.00 |
| 4. | Jesse Cameron | $ 89,500.00 |
| 5. | Ronnie Clark | $ 10,000.00 |
| 6. | Donnie Tinsley | $ 15,000.00 |
| | Total Loss: | $151,500.00 |

The remaining loss amount alleged by the government was not reasonably foreseeable to Mr. Kennedy, and he should not be held accountable for such loss. See *United States vs. Tudeme*, 457 F.3d 577 (6th Cir. 2006). Based upon the loss amount of $151,000.00, the loss enhancement should be, at most, 10 points.

Further, the loss claimed by American Express should not be considered loss or restitution owed in this case. The government's theory in this case is that victims were enticed to invest/loan money that was never going to be paid back. Phillip Russell's and Sheila Kennedy's use of American Express cards are outside the scope of this case, and any loss associated with that spending should not be counted.

Finally, Dr. Randall Garner's claim should not be included in the loss amount or the restitution amount as he is owed a dental bill and is not one of the victims related to this case. Again, the bill for the dental services is outside the scope of this case.

The Court should also consider that the first time Mr. Kennedy asked to borrow any money was on May 5, 2007, well after investments began being solicited by others.

---

[1] The names and amounts are derived from Trial Exhibit 195, trial testimony, and Appendix A to the PSI Report.

The Court should also consider that the jury acquitted Mr. Kennedy of conduct that occurred before June 19, 2006.

    **2.**     <u>Page 15, Paragraph 37 and Page 16, Paragraph 45</u>: *Number of Victims (U.S.S.G. §2B1.1(b)(2)(B))*

Mr. Kennedy objects to being held accountable for more than the number of individuals listed in government exhibit 195, which is less than 10. As such, Mr. Kennedy's position is that the 4-point enhancement should be removed.

    Alternatively, Mr. Kennedy should be held accountable for 10-49 victims. The U.S. Probation Office lists 49 victims in the Appendix A restitution chart and two additional victims, Ms. Olsen and the McGees, totaling 51 alleged victims. Since American Express and Dr. Randall Garner should not be considered victims in this case, the maximum total number of victims in this case should be 49. Further, it is counsel's belief that Blanche Turner is not claiming to be a victim in this case, further reducing the number of victims.

    **3.**     <u>Page 15, Paragraph 46</u>: *Sophisticated Means (U.S.S.G. §2B1.1(b)(9)(C))*

Mr. Kennedy's conduct in this case did not involve "sophisticated means." Application Note 8(B) defines "sophisticated means" as especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. First, the facts related to Mr. Kennedy as noted in Paragraph 46 of the PSI report do not amount to sophisticated means. Second, Mr. Kennedy asked to borrow money from individuals for claims/judgments, living expenses, attorney fees, and medical expenses related to Sheila Kennedy. He then sent this money to Sheila Kennedy. There is

nothing *especially complex or especially intricate* about Mr. Kennedy's offense conduct. The Court should remove this two-point enhancement.

   4.   Page 16, Paragraph 53: *Total Offense Level*

The Total Offense Level should be 17, calculated by a base offense level of 7 and a loss enhancement of 10. This Total Offense Level accurately reflects the conduct of Mr. Kennedy. The unforeseeable conduct of others, which substantiates the other enhancements, should not be applied to Mr. Kennedy.

With an offense level of 17 and a criminal history category of I, the correct sentencing guideline range in this case should be 24-30 months.

**Factors To Be Considered By The Court In Determining**

**the Appropriate Sentence In This Case**

This Court must consider the sentencing guidelines and the factors listed in 18 U.S.C. §3553(a) in determining the appropriate sentence in this case.

Regarding the sentencing guidelines, this Court lawfully has the discretion to give as much or as little weight as it wishes to the sentencing guidelines in determining the appropriate sentence in this case.

Mr. Kennedy would ask the Court to give significant weight to the following factors listed in 18 U.S.C §3553(a) as these factors allow the Court to sentence Mr. Kennedy to an appropriate sentence that is individualized and allows the Court to sentence Mr. Kennedy reasonably, unlike the suggested sentence calculation provided by the guidelines.

18 U.S.C. §3553(a) provides as follows:

(a) Factors to be considered in imposing a sentence.--The court shall impose a sentence *sufficient, but not greater than necessary*, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed--
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for--
(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, and that are in effect on the date the defendant is sentenced; or
(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code;
(5) any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2) that is in effect on the date the defendant is sentenced;
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.
(Emphasis added.)

Mr. Kennedy will address some of the above listed factors individually.

**(1) <u>the nature and circumstances of the offense and the history and characteristics of the defendant</u>;**

<u>The Nature and Circumstances of the Offense</u>

Mr. Kennedy did not make any of the telephone calls listed in Counts One through Three, did not conduct any of the wire transfers listed in Counts Four through Seven, and did not mail any of the letters listed in Counts Eight through Twelve.

Mr. Kennedy asked to borrow money from individuals for claims/judgments, living expenses, attorney fees, and medical expenses related to Sheila Kennedy. He

then sent this money to Sheila Kennedy. Mr. Kennedy did not derive any benefits from his conduct, nor the conduct of others in this case. In fact, Mr. Kennedy is out more than $20,000.00 of his own money as a result of the conduct of others in this case.

### History and Characteristics of the Defendant

Mr. Kennedy is sixty-seven (67) years old. He had never been convicted of any crime before the jury's verdict was returned in this case.

Mr. Kennedy was elected to and served a one-year term of office as "The National FFA President". He was a college sophomore at the time, and his duties required him to withdraw from college to travel throughout the country and give speeches to major conventions, FFA and other major organizations. He appeared on nationwide TV, including being the guest of honor on the "To Tell The Truth" CBS-TV program that was aired April 14, 1965. He met with President Lyndon Johnson at the White House in July, 1965. He was the narrator of a film. He presided at the National FFA Convention with 13,000 members in attendance. He was honored with "Kenneth Kennedy Day" in Trigg County, Kentucky.

Prior to being charged in this case, Mr. Kennedy, who had been a lawyer for many years and who knew his Fourth and Fifth Amendment Rights, cooperated with law enforcement by speaking with them and allowing law enforcement to search his residence without a search warrant.

> **(2) the need for the sentence imposed--**
> **(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;**
> **(B) to afford adequate deterrence to criminal conduct;**
> **(C) to protect the public from further crimes of the defendant;**
> **(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;**

**and**

**(3) the kinds of sentences available;**

As there is not a mandatory minimum sentence required in this case, the Court may grant Mr. Kennedy probation. When considering Mr. Kennedy's individual conduct in this case, a sentence of five years probation in this case promotes respect for the law, provides a just punishment, affords adequate deterrence to criminal conduct for both this defendant and other potential defendants, and protects the public from further crimes of the defendant.

**(4) the kind of sentence and the sentencing range established for--**
**(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, and that are in effect on the date the defendant is sentenced; or**
**(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code;**

If the Court determines the loss amount in this case to be more than $2.5 million but not more than $7 million, resulting in an 18 point enhancement, the Court should note the increase in the resulting guideline range from the range based upon the loss amount directly attributable to Mr. Kennedy to the range based upon the loss applied to him as a result of the conduct of others.

The Total Offense Level should be 17, calculated by a base offense level of 7 and a loss enhancement of 10. This Total Offenses Level accurately reflects the conduct of Mr. Kennedy. The unforeseeable conduct of others, which substantiates the other enhancements, should not be applied to Mr. Kennedy.

The guideline range based upon the conduct of Mr. Kennedy only is 24-30 months. The guideline range, when including the unforeseeable conduct of others in this case, is 108-135.

> **(5) any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2) that is in effect on the date the defendant is sentenced;**
>
> **(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and**
>
> **(7) the need to provide restitution to any victims of the offense.**

The amount of restitution in this case is significant. The victims in this case will be much better off if Mr. Kennedy is on probation and able to pay restitution as opposed to him being incarcerated and unable to pay restitution.

The Court should consider the fact that Mr. Kennedy was indicted in Kentucky in 2009 on a case that was based on conduct related to this case. Mr. Kennedy voluntarily surrendered in that case on August 14, 2009. Mr. Kennedy made bond on October 13, 2009, after serving 61 days in jail. Mr. Kennedy requests this Court to consider the two months he served in the Kentucky case as time served in this case as the conduct in the Kentucky case is related to the conduct in this case.

## Conclusion

Based upon the foregoing, Mr. Kennedy requests this Court to sentence him to probation or, alternatively, to home confinement. This requested sentence is certainly sufficient, but not greater than necessary, to promote the purposes of sentencing.

Respectfully submitted,

*s/ Paul J. Bruno*
Paul J. Bruno, B.P.R. #17275
Attorney for Kenneth Kennedy
414 Union Street, Suite 904
Nashville, Tennessee 37219
(615) 244-1110

**CERTIFICATE OF SERVICE**

I hereby certify that a true and exact copy of the foregoing *Sentencing Memorandum* has been electronically delivered to Ty Howard, Assistant United States Attorney, 110 Ninth Avenue, South, Suite A961, Nashville, TN 37203 3870, on this the 21st day of June, 2011.

*s/ Paul J. Bruno*
Paul J. Bruno